Thomas Wade, Sr., before his death, made a will, which was duly proven, whereby, among other things, the said Thomas Wade, Jr., the said Holden Wade, and three other persons, were appointed executors thereof, with authority to them generally to sell and dispose of the testator's real property for the payment of his the testator's debts. Said Thomas Wade, Jr., and Holden Wade undertook the execution of said will, and were the only acting executors thereof. After the death of the said Thomas Wade, Sr., in the year, a judgment was obtained by one Eveleigh against the said Thomas Wade, Jr., and Holden Wade, as *Page 286 
executors of said Thomas Wade, Sr., in the county court of Anson County, of the term of ______, of the same year, for the sum of ______ Said judgment was, however, taken by confession, without the finding or acknowledgment of any plea in favor of said executors upon said judgments. No Scire facias issued to the heirs of said Thomas Wade, Sr., to show cause why execution should not issue upon said judgment against the lands of said Thomas Wade, Sr., then descended in their hands. A writ of scire facias upon said judgment nevertheless did issue, returnable in said county court to the term of July, 1790, by virtue of which a levy and sale regularly took place of a variety of lands. In pursuance of the sale so made, one William May, then sheriff of said county of Anson, made and executed a deed to the purchasers. At the same day and place of making said sheriff's deed the said Thomas Wade, Jr., and Holden Wade, on the back of said sheriff's deed made, executed, and delivered, under their respective hands and seals, an instrument of writing in the following words, viz.:
(373) "To all to whom these presents shall come: Know ye, that we, Holden Wade and Thomas Wade, as well for ourselves as the other executors and executrix of Thomas Wade, deceased, do hereby agree to and confirm the within deed, made and executed by William May, sheriff of Anson County, for the intent and meaning therein specified, by virtue of the power vested in us by the last will of T. Wade, deceased. In witness whereof we have hereunto set our hands and seals the day and date of the within presents." Signed by Holden and Thomas Wade, as acting executors of T. Wade, deceased.
The tract of 150 acres, first before mentioned, is the same tract of 150 acres which is mentioned and described in the said deed of William May. The same 150 acres were conveyed by the purchases at the said sheriff's sale to one Joshua Prout, on 28 June, 1798. On 19 July, 1809, said Joshua Prout conveyed lots Nos. 7 and 19, parcel of the said 150 acres and also parcel of the premises in the plaintiff's declaration mentioned, to one George Wade (uncle to the George Wade before named and brother of Thomas Wade, Sr.). On 21 January, 1811, said George Wade, who purchased of Prout, conveyed said lots Nos. 7 and 19 to one John Coleman, who on 9 May, 1812, conveyed the same lots Nos. 7 and 19 to the defendant William Mendenhall.
We are called upon in this case to say whether the plaintiffs have made out a legal title to the premises in question; and it is admitted they have, unless Holden, their father, parted with it in his *Page 287 
lifetime. The only act done by him was an endorsement upon a sheriff's deed, in which the premises were conveyed by the sheriff to a purchaser under and execution which, by the statement, appears unsupported by any judgment. The sheriff, therefore, had no authority to sell. By this endorsement the father declares that in virtue of the authority derived from the will of his testator, he confirms the sale. These, if not the words, are at least their substance.
Now, it may be laid down as the general doctrine in relation to the execution of powers, that it is not necessary to recite that the act is done in virtue of the power; but that it is sufficient execution if it can be done only in virtue of the power; for though the form of executing may not suggest the execution of a power, yet the purpose of the act done can only be explained by resorting to the power; and the maxim is, that it is immaterial whether the intention be collected from the words
used or the acts done. Quia non refert aut quis intentionem suamdeclaret, verbis, aut rebus ipsis vel factis. And, on the other hand, it is equally clear, as this intention is to guide and give efficacy to the act, that where a party has both power and interest, and he does not actpurporting to be in virtue of his interest, that he shall be held to intendthat, and not to exercise his power. Sir Edward Cleave's case and 10 Vesey, Jr., 346, present Lord Chancellor in the case of Maundrell, 2 Maundrell. And this, therefore, at once disposes of all that has been said upon the subject of estoppel; for if the endorsement only professes to be in execution of a power, the party making it can only be concluded from denying any of the facts, affirmed by him; and if it should be suggested that it may operate as the confirmation, the answer has already been given that the endorsement excludes the idea of (375) the exercise of any personal dominion. And, indeed, it is essential to the operation of every confirmation that there should be some estate, though voidable, for it to act upon; the maxim there being, Confirmatio estnulla, ubi donum precedens est invalidum, it may make a voidable estate good, but can give no effect to one that is void. Co. Lit., titleConfirmation.
The sheriff could convey by his deed nothing but what old Wade had, and he having nothing, the deed was void. Whatever title is claimed from the effect of the endorsement is at last referrable to the testator's will. The executors as trustees are only as instruments to effectuate the devise. The father of the plaintiffs has therefore done nothing which, in law, has passed his interest, and whether he ought in justice and equity to be restrained from asserting it must be referred to those courts to whom the jurisprudence of our country has confided the power of deciding. It may turn out that the father was guilty of a fraud, or it *Page 288 
may be the case he acted under a mistake. If the former, he would be compelled to convey. If the latter, it would be unjust he should lose his land.